415 P.2d 769]

[L. A. No. 28503. In Bank. July 19, 1966.]

SALLY J. IRWIN, Plaintiff and Appellant, v. CITY OF
MANHATTAN BEACH et al., Defendants and Respond-
ents.

( 13 )

14

Clifford W. Twombly for Plaintiff and Appellant.

Walter N. Anderson, City Attorney, Sweeney, Irwin, Cozy & Foye, Thomas P. Foye and William R. Sweeney for Defendants and Appellants.

PEEK, J.—This is an appeal from a judgment of dismissal entered after a demurrer to an amended complaint was 'sustained without leave to amend.

Plaintiff's original complaint, filed on October 4, 1961; alleged that she was a resident of Los Angeles County and a real property owner and taxpayer in the defendant City of Manhattan Beach; that certain other property owners in that city, also named defendants, had applied to the city for a permit to construct a pedestrian overpass connecting their respective business establishments, said overpass to span a public street of the city; that defendant city was the "owner" of the said public street; that the overpass would not be available for general pedestrian traffic but would be constructed and used as an integral part of the two business premises, permitting convenient intercourse between them; that the proposal was approved by the city council and a written agreement between the city and the two property owners was accordingly entered into; that the construction and use of the overpass would constitute an exclusive private privilege, without consideration, for the use of public property by the two property owners involved; that the further public use of the street to be spanned would be limited and interfered with; that the contemplated private use would divert public property into a source of private profit, to the detriment of the taxpayers, and contrary to the state Constitution; and that the city had no power or authority to permit such construction.

The complaint further alleged that the city council had refused plaintiff's demand that the agreement between the city and the property owners be rescinded, and that she and the other taxpayers of the city would suffer irreparable damage if said agreement were not declared illegal and construction pursuant to it enjoined. The prayer sought relief accordingly.

The complaint incorporated by reference the indicated written agreement, which was made on July 5, 1961, three months prior to the filing of the complaint. That agreement recited in part that "the City is vitally interested and encourages the removal of pedestrian traffic insofar as practicable from the public streets and the construction of the bridge, overpass, or pedestrian ramp is found to be in the best interest of the City and the use herein contemplated will be an aid to public health, safety, and welfare." The permission sought was granted subject to the following conditions: (a) that the overpass should be constructed in accordance with plans and

specifications to be submitted to and approved by the chief building inspector and the director of public works of the city, and that the decision of said officers as to the "manner, nature, and character of construction" should be final; (b) that the overpass should be constructed so as not to interfere with the public use of the street which it spanned, and that the construction, repair, or maintenance of the overpass should be undertaken in such a way as not to interfere at any time with the traffic on said street; (c) that the construction should be done "pursuant to all the laws and regulations of any governmental agency applicable thereto"; (d) that the overpass should be of designated dimensions and should be a certain height above the public street; and (e) that no part of the overpass should be used for purposes other than ingress and egress, and particularly that no part should be used for the sale or consumption of food or beverages.

At the time the complaint was filed, the city had approved the plans and specifications submitted by the individual defendants, and construction had been commenced and was proceeding.

On December 6, 1961, the city demurred to the complaint on grounds of lack of capacity to sue, failure to state a cause of action, lack of jurisdiction over the subject matter, uncertainty, ambiguity, and unintelligibility. This demurrer was sustained with leave to amend.

On December 20, 1961, the city and the individual defendants modified their agreement, adding two important provisions. First, it was agreed that the individual defendants were to obtain a policy of insurance, designating the city as an additional insured, to insure the public against "loss or damage that might result to any person or property as a result of the maintenance of said pedestrian overpass"; that the said policy should be maintained at the expense of the individual defendants as long as the overpass should be in existence; and that "failure to maintain said policy of insurance shall be grounds for revocation of this permit forthwith." Second, the city was given the power to revoke the permit on grounds "including but not limited to" the following: (a) if the air space occupied by the overpass should be required by the city for a "paramount municipal use or purpose," or (b) if the overpass should be used for any purpose other than ingress and egress between the two business establishments, or (c) if the overpass should be maintained in such a manner as to constitute a public nuisance, or (d) if the overpass should be

"declared by any court of competent jurisdiction to be an unlawful structure over a public street." On the same day the city council passed a resolution approving the agreement as modified.

On January 11, 1962, plaintiff filed her amended complaint, which in all relevant respects was identical to her original complaint. The city demurred on the same grounds as before, and on September 7, 1962, the demurrer was sustained without leave to amend in accordance with a memorandum of ruling filed by the court. Plaintiff appealed from the judgment of dismissal subsequently entered, and the District Court of Appeal reversed that judgment on the ground that the defendant property owners, parties indispensable to the action, neither had been served with process nor had entered an appearance below, rendering the judgment of dismissal void. (*Irwin* v. *City of Manhattan Beach,* 227 Cal.App.2d 634 [38 Cal.Rptr. 875].) At the time of that decision, June 5, 1964, the overpass in question was completed and had been in use for about 2½ years, no temporary restraining order having been sought at any time.

Plaintiff then served the defendant property owners, and demurrers to the amended complaint were again interposed, the city and the property owners demurring separately on grounds identical to those stated in the city's original demurrer. On November 12, 1964, both demurrers were sustained without leave to amend "per Memorandum of Ruling filed heretofore in this action on September 7, 1962." Plaintiff appeals from the judgment of dismissal subsequently entered.

■ Defendants urge, and the trial court in its memorandum opinion held, that the demurrers herein must be sustained because plaintiff is without legal capacity to sue. Reliance is placed upon section 526a of the Code of Civil Procedure, which provides in relevant part as follows: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by *a citizen resident therein,* or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." (Italics added.)

As noted above, plaintiff did not allege in her complaint that she was a "citizen" or "resident" of Manhattan Beach. It appears that she is unable truthfully to so allege, for she is

a resident and citizen of Los Angeles, though, as she alleged, she owns property in Manhattan Beach and pays taxes levied against that property. It is therefore clear that the bare language of section 526a renders her without legal capacity to maintain the instant lawsuit.

That language would compel our holding accordingly in the instant case if it were not for the decision of this court in *Mines* v. *Del Valle*, 201 Cal. 273 [257 P. 530], wherein it was held that section 526a did not render a nonresident taxpayer without capacity to challenge alleged illegal government expenditures. Thus, at least in the case of illegal expenditures, as opposed to waste, etc., judicial decision has wholly altered the import of the statute's language.

It is now urged that we should overrule the *Mines* case, if for no other reason than because it was not supported by precedent. It is pointed out that both cases cited in support of that decision, *Osburn* v. *Stone*, 170 Cal. 480 [150 P. 367], and *Crowe* v. *Boyle*, 184 Cal. 117 [193 P. 111], do not in fact support it because in each the party plaintiff was a resident as well as a taxpayer, though the language of those cases speaks only of taxpayers. Further, we are referred to the case of *Thomas* v. *Joplin*, 14 Cal.App. 662 [112 P. 729], wherein the District Court of Appeal in 1910 cogently pointed out that the language of section 526a clearly reflects a legislative intention to limit the right to sue in this kind of case, for it clearly altered the common law, which required only that the plaintiff be a taxpayer supporting the governmental entity whose act is sought to be challenged.

We would consider these arguments eminently persuasive if it were not for the fact that the reading of section 526a which defendants favor violates the equal protection clause of the Fourteenth Amendment. No reason has been presented to us, or conceived by us, which would render less than arbitrary and capricious a distinction which would give a nonresident *corporate* taxpayer the right to maintain a suit such as here contemplated, but would deny the same right to a nonresident taxpayer who is a *natural person*.

*Grocers' etc. Union* v. *Kern County Land Co.*, 150 Cal. 466 [89 P. 120], was an action for the specific performance of a contract for the sale of land. Suit was brought in San Francisco County, defendant corporation's principal place of business, and defendant moved under section 392, subdivision 1, of the Code of Civil Procedure for a change of venue to Kern County, the situs of the land in question. The motion was

denied on the basis of certain cases which had held that article XII, section 16, of the state Constitution fixed the place of trial against corporations in the county of the principal place of business, and that legislative enactments fixing the place of trial as to natural persons could not impair the force of this constitutional provision. (*Miller & Lux* v. *Kern County Land Co.*, 134 Cal. 586 [66 P. 856]; *Miller & Lux* v. *Kern County Land Co.*, 140 Cal. 132 [73 P. 836].) This court there held that such a construction worked a violation of defendant's rights under the Fourteenth Amendment and reversed the order. "That the discrimination is arbitrary and rests upon no logical or rational distinction seems too plain to permit of debate or to call for elaborate consideration. No conceivable ground can be suggested why a natural person should have the right of trial of an action involving an interest in land in the county where the land is situated, and the same right should be denied to a corporation. If the situation were reversed the absurdity would be patent. A law which granted to a corporation the right and denied it to a natural person would be held arbitrarily discriminative without a moment's hesitation." (*Grocers' etc. Union* v. *Kern County Land Co.*, *supra*, 150 Cal. 466, 474.) No reason for hesitation here appears.

This holding, however, does not compel a reversal of the judgment herein. If a complaint is insufficient on any ground properly specified in a demurrer, an order sustaining the demurrer must be upheld even though the particular ground upon which the court sustained it may be untenable. (*Moxley* v. *Title Ins. & Trust Co.*, 27 Cal.2d 457, 462 [165 P.2d 15, 163 A.L.R. 838].) It follows that the judgment of dismissal must be affirmed if the demurrer could have been properly sustained without leave to amend.

As above noted, one of the grounds upon which the demurrers herein were interposed was that the amended complaint failed to state a cause of action. The controversy on this point revolves about the question whether Manhattan Beach, a general law city, had the power to authorize construction of the structure here involved. If, as the complaint states, the city had no such power, then a cause of action is stated, and the judgment of dismissal must be reversed.

 A general law city has only those powers expressly conferred upon it by the Legislature, together with such powers as are "necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation." The powers of such a city are

strictly construed, so that "any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation." (*Hurst* v. *City of Burlingame*, 207 Cal. 134, 138 [277 P. 308].)

Defendants purport to find express power to authorize construction of a private street overpass in section 37356 of the Government Code, which provides as follows: "When the legislative body determines that the public interest or convenience requires the construction and maintenance of passageways or other structures under or over any *public alley* in the city, to connect buildings on abutting property and facilitate the public use of the streets, it may grant revocable permits for their construction and maintenance. They shall be constructed and maintained so as not to interfere with public traffic on the alley. The city may regulate the use of such passageways or structures." (Italics added.)

It seems clear that "alley" does not include "street," as the lesser does not include the greater. Further, an alley differs from a street in quality as well as quantity, in that "it is a right of way . . . to serve a limited neighborhood for local convenience and not for general passage or travel as in the case of streets." (64 C.J.S., Municipal Corporations, § 1653, p. 24.) Finally, the juxtaposition of the two words within the statute compels the conclusion that they were not meant to be coextensive in meaning, and that therefore section 37356 contains no express power to authorize construction of a *street* overpass connecting private buildings on abutting property.

On the other hand, we cannot agree with the contention that the particular and specific wording of section 37356 excludes by implication any power to authorize construction of an overpass spanning a public thoroughfare which is not a "public alley." The maxim *expressio unius est exclusio alterius*, like all other maxims of jurisprudence, operates as an aid to the just application of statutory law (see Civ. Code, § 3509), not as an inflexible rule of construction. The quest after legislative purpose remains paramount whether the statutory expression be general or particular. (Compare, in this regard, *County of Modoc* v. *Spencer*, 103 Cal. 498 [37 P. 483], with *Matter of La Societe Francaise*, 123 Cal. 525 [56 P. 458, 787].) In the instant case, an examination of the statutory law relating to the power of a general law city to deal with its streets and highways provides ample support for the view that the Legislature, by outlining with clarity the several require-

ments necessary to the authorization and maintenance of passageways spanning one kind of public thoroughfare, did not thereby seek to withhold by implication municipal powers relative to authorization and control of passageways spanning other kinds of public thoroughfares—and also that, beyond this absence of negative implication, positive powers of appropriate scope are present within the statutory structure.

It is clear that a municipality may itself construct an overpass spanning a public street. The primary source of a general law city's power over its streets and highways, section 40401 of the Government Code, indicates,[1] among other things, that such a city may ''(a) Establish, build, and repair bridges. . . . (c) Establish, lay out, alter, keep open, improve, and repair streets, sidewalks, alleys, tunnels, and other public highways, . . . [and] (i) Generally manage and control all such highways, tunnels, and places.'' Further, such construction is expressly contemplated by section 5101 of the Streets and Highways Code, that portion of the Improvement Act of 1911 which details the kinds of work which may be authorized pursuant to the grant of power: ''Whenever in the opinion of the legislative body the public interest or convenience may require, it may order the whole or any portion . . . of any one or more of the streets, places, [or] public ways . . . to be improved by or have constructed therein, over or thereon, either singly or in any combination thereof, any of the following: . . . (b) The construction or reconstruction of . . . bridges . . . or viaducts.'' Finally, the Government Code provides for the financing of such structures by means of revolving funds (§ 43420) or special taxes (§ 43225) when it is determined that ordinary city income is insufficient.

It is also clear that, should such a pedestrian overpass be municipally constructed, the city could limit the use of the structure in any reasonable manner, including its withdrawal from the access of the public at large. (Gov. Code, § 37359.)

That the City of Manhattan Beach possesses the power, upon a finding of public interest, to construct a pedestrian overpass such as that here involved, is therefore mani-

---

[1]Although section 40401 on its face provides only a grant of power to expend ordinary city income for certain specified purposes, that section is a codification of section 862.5 of ''An act to provide for the organization, incorporation, and government of municipal corporations'' (added by Stats. 1935, ch. 737, p. 2069), and that original enactment clearly constitutes a general grant of power relative to the matters specified. The codification of section 862.5 must be construed as a restatement and continuation of that statute, rather than as a new and different enactment. (Gov. Code, § 2.)

fest. The fact of incidental benefit to private individuals would not be relevant in the face of such a finding absent fraud, oppression, or manifest abuse of discretion in the proceedings. (See *Bowles* v. *Antonetti,* 241 Cal.App.2d 283 [50 Cal.Rptr. 370]; *People* v. *City of Pomona,* 88 Cal.App.2d 460 [198 P.2d 959, 200 P.2d 176]; *People* v. *City of San Rafael,* 95 Cal.App. 733 [273 P. 138].) The question in the instant case is thus whether the city, possessing the power to construct the overpass here in question, may authorize its construction by private parties at their own expense and subject to strict municipal control as to design, maintenance, and future use. We answer that question in the affirmative.

In *Egan* v. *City & County of San Francisco,* 165 Cal. 576 [133 P. 294, Ann.Cas. 1915A 754], taxpayers sought to invalidate an agreement between the city and the Musical Association of San Francisco, a corporation formed to construct an opera house on city property. The association was to expend not less than $750,000 for this purpose, and the "construction, decoration, furnishing, and equipment of the opera house" was to be "under the direction, control and supervision and at the expense of the association," but the exterior design was to be approved by the city. Title was to vest in the city, but the "conduct, control, management, and possession" of the opera house was to be in a board of trustees, a substantial number of whom were to be members of the association. Included in this power of control was the "sole right to direct and prescribe the quality of performances to be given, and the amount to be paid for admission, . . ." We there held that agreement invalid because, granting that the city had power to own and conduct an opera house, it could not delegate ultimate control over the operation. "If the management of an opera house constitutes a public use, the public character of the use can exist only so long as the control is retained in the hands of some public agency." (*Egan* v. *City & County of San Francisco, supra,* 165 Cal. 576, 584.) The converse of this proposition has been explored in several cases (see *City of Oakland* v. *Williams,* 206 Cal. 315, 328 [274 P. 328]; *Willmon* v. *Powell,* 91 Cal.App. 1, 8 [266 P. 1029]; *Hiller* v. *City of Los Angeles,* 197 Cal.App.2d 685, 693 [17 Cal.Rptr. 579]; *County of Los Angeles* v. *Nesvig,* 231 Cal.App.2d 603, 617 [41 Cal. Rptr. 918]). "[T]he issue in each case of delegation is whether ultimate control over matters involving the exercise of judgment and discretion has been retained by the public

entity.'' (*County of Los Angeles* v. *Nesvig, supra,* 231 Cal. App.2d 603, 617.)

It is difficult to imagine how the city herein could have more completely retained ultimate control over those matters involving the exercise of judgment and discretion relative to the pedestrian overpass. As noted above, the city and its building officers had plenary power of approval or rejection of plans and specifications. Further, the modified agreement requires, upon pain of revocation, the maintenance of public liability insurance of specified limits. Finally, the city retains the broad power to revoke its permit if the space should become needed for a paramount municipal use, or if the overpass should be used for improper purposes, or if the overpass should be maintained so as to constitute a public nuisance, or if the overpass should be declared illegal. In sum, the city's control over the construction, maintenance, and use of the overpass was *and is* of such a comprehensive nature that only so long as public benefit remains dominant and private benefit incidental can the structure properly endure. We hold in these circumstances that the municipality had power to authorize the construction at issue.

It is plaintiff's contention, however, that the instant exercise of this power constitutes a gift of public property in violation of article IV, section 31 of the state Constitution because the benefit of the agreement accrues to private parties. The difficulty with this position is that the agreement set forth in her complaint shows that the city council has expressly found that the structure in question is in the public interest in that it removes a substantial segment of foot traffic from a congested street. Such a finding is reviewable by a court only where it is alleged that fraud, oppression, or manifest abuse of discretion accompanied the determination of public benefit (see *Laura Vincent Co.* v. *City of Selma,* 43 Cal.App.2d 473, 476 [111 P.2d 17]), and plaintiff has alleged none of these. The mere allegation of private benefit cannot be considered an allegation of fraud in the proceedings. (See *Bowles* v. *Antonetti, supra,* 241 Cal.App.2d 283; *People* v. *City of Pomona, supra,* 88 Cal.App.2d 460.)

We hold that the City of Manhattan Beach had power to authorize construction of the overpass herein; that the exercise of that power in the purported public interest is not reviewable in the absence of fraud, oppression, or manifest abuse of discretion; and that the complaint herein, because it does not allege such misconduct on the part of the city, fails to state a

cause of action. ▮▮▮ Further, though plaintiff might amend her complaint to allege such misconduct should she be so inclined and able, the record shows that she chose to stand on her present complaint after being offered an opportunity to amend further. In these circumstances, the demurrer was properly granted without leave to amend, and the judgment of dismissal properly entered.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.