[Civ. No. 35697. First Dist., Div. One. Jan. 19, 1976.]

NORSCO ENTERPRISES, Plaintiff and Respondent, v.
CITY OF FREMONT, Defendant and Appellant.

490

COUNSEL

Allen E. Sprague, City Attorney, and Theodore R. Bresler, Assistant City Attorney, for Defendant and Appellant.

Calvin T. Goforth for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—This appeal concerns the validity of certain "in lieu fees" levied upon plaintiff Norsco Enterprises or its affiliate Norsco, Inc. (hereafter "Norsco") by the City of Fremont (hereafter sometimes "City"), under the ostensible authority of Business and Professions Code

section 11546 (hereafter "section 11546").[1] That statute provided, subject to certain conditions, that: "The governing body of a city or county may by ordinance require the dedication of land, the payment of fees in lieu thereof, or a combination of both, for park or recreational purposes as a condition to the approval of a final subdivision map, . . ."

The case was tried on stipulated facts.

In 1968, appropriate authorities of the City of Fremont approved the construction of an apartment complex of 124 rental units and related facilities. At the time the City had not enacted an ordinance such as was permitted by section 11546. Prior to 1972 the structures were completed, and thereafter Norsco became their owner. Around April of 1972 Norsco filed with the City an application for a use permit and for approval of a tentative subdivision map for conversion of the 124 apartment units into condominium forms of ownership. No physical change was planned for the complex which will hereafter be termed the "project" or "condominium project."

Treated as condominiums, the project concededly was a *"subdivision,"* as contemplated by section 11546. During the pertinent period, Business and Professions Code section 11535.1 (enacted 1963, repealed, and reenacted 1974 in substantially similar form, as Gov. Code, § 66424, operative Mar. 1, 1975) provided: ". . . 'subdivision' includes a condominium project, as defined in Civil Code Section 1350, containing five or more condominiums, as defined in Civil Code Section 783, ... ."

In the meantime the City had enacted such an ordinance as was authorized by section 11546. It was termed Fremont Municipal Code section 8-1716 and it read, in relevant part, as follows: "(a) The subdivider shall dedicate a portion of the land in the subdivision, or pay a fee in lieu of such dedication equivalent in value to such land, or provide a combination of such dedication and payment, for park and recreational purposes, in accordance with the following definite standards: . . ."

The City generally granted the use permit and approved the plans of Norsco for condominium conversion, subject however to the condition

---

[1] Since the trial of the instant action section 11546 was repealed. It was contemporaneously reenacted, however, in substantially similar form, as Government Code section 66477, operative March 1, 1975.

that: "Prior to acceptance of the final map by the City Council, the Park Dedication in lieu fee [$17,650] shall be paid to the City."

The instant action resulted.

On the uncontroverted facts the trial court concluded, as a matter of law, that: "Plaintiff [Norsco] is entitled to the declaration which it seeks, namely, that Fremont Municipal Code § 8-1716 has been unlawfully applied by [the City] to Plaintiff." Judgment was entered accordingly and the City has appealed.

We make some preliminary observations.

It has been held that section 11546, and municipal ordinances enacted under its authority, are not constitutionally deficient. (See *Associated Home Builders etc., Inc.* v. *City of Walnut Creek,* 4 Cal.3d 633, 648 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847].)

Fremont Municipal Code section 8-1716 had prospective effect only; it was not applicable to "subdivision" condominiums in existence at the time of its enactment. This also is conceded.

The City of Fremont is a "general-law" city. ■ As such it "has only those powers expressly conferred upon it by the Legislature, together with such powers as are 'necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation.' The powers of such a city are strictly construed, so that 'any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation.' " (*Irwin* v. *City of Manhattan Beach,* 65 Cal.2d 13, 20-21 [51 Cal.Rptr. 881, 415 P.2d 769].)

■ Norsco appears to agree that had its application to the City contemplated *construction* of such a condominium project, it would have been liable for the "in lieu fees" here at issue. For in that case the project could be expected to bring into the community 124 new families with a resulting increased burden on available park and recreational facilities. But it contends that the project having already been built, and its units having already been occupied, at the time of Fremont Municipal Code section 8-1716's enactment and the project's proposed conversion to condominium ownership, section 11546 and the related ordinance were constitutionally, and otherwise, inapplicable. It insists that the statute and ordinance may affect only such subdivisions as are reasonably calculated to bring "new residents" into the area.

Reliance is placed by Norsco on certain language of *Associated Home Builders etc., Inc.* v. *City of Walnut Creek, supra,* 4 Cal.3d 633, 637, explaining the rationale of section 11546 in this manner: "Section 11546 and the city's ordinance are designed to maintain and preserve open space for the recreational use of the residents of new subdivisions. . . . Thus subdividers, providing land or its monetary equivalent, afford the means for the community to acquire a parcel of sufficient size and appropriate character, located near each subdivision which makes a contribution, to serve the general recreational needs of the new residents."

We observe that *Associated Home Builders etc., Inc., supra,* dealt with hypothesized future subdivision projects calculated to bring new residents into Walnut Creek. The action there was brought by Associated Home Builders etc., Inc., and others, for declaratory and injunctive relief with relation to section 11546. But the high court pointed out that population growth brought about by a proposed subdivision was not the *only* justification for the statute. It rejected an argument, such as that made here, that the required land dedication or "in lieu fees" were "justified only if it can be shown that the need for additional park and recreational facilities is attributable to the increase in population stimulated by the new subdivision . . . ." (Pp. 637-638.)

Reaffirming an earlier decision (*Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31 [207 P.2d 1]), the *Associated Home Builders etc., Inc., supra,* court then commented as follows: ". . . a subdivider who was seeking to acquire the advantages of subdivision had the duty to comply with reasonable conditions for dedication so as to conform to the welfare of the lot owners and the general public. We held, further, that the conditions were not improper because their fulfillment would incidentally benefit the city as a whole or because future as well as immediate needs were taken into consideration and that potential as well as present population factors affecting the neighborhood could be considered in formulating the conditions imposed upon the subdivider. We do not find in *Ayres* support for the principle urged by Associated that a dedication requirement may be upheld only if the particular subdivision creates the need for dedication. [¶] Even if it were not for the authority of *Ayres* we would have no doubt that section 11546 can be justified on the basis of a general public need for recreational facilities caused by present and future subdivisions." (P. 638.) "We see no persuasive reason in the face of these urgent needs caused by present and anticipated future population growth on the one hand and the disappearance of open land on the

other to hold that a statute requiring the dedication of land by a subdivider may be justified only upon the ground that the particular subdivider upon whom an exaction has been imposed will, solely by the development of his subdivision, increase the need for recreational facilities to such an extent that additional land for such facilities will be required." (Pp. 639-640.)

This authority makes it clear, contrary to Norsco's contention, that a municipal ordinance enacted pursuant to section 11546 may require land dedication or "in lieu fees" upon conversion of a building into condominiums and thus into a "subdivision," even though "new residents" of the community do not result therefrom.

■ Norsco contends that, nevertheless, Civil Code section 1370 mandates a contrary result. That section states: "*Unless a contrary intent is clearly expressed,* local zoning ordinances shall be construed to treat like structures, lots, or parcels in like manner regardless of whether the ownership thereof is divided by sale of condominiums or into community apartments as defined in Section 11004 of the Business and Professions Code, rather than by lease of apartments, offices or stores." (Italics added.)

We opine that Fremont Municipal Code section 8-1716 *clearly expresses* an intent that condominium projects, unlike similar structures with other types of ownership, shall be treated as "subdivisions," subject to the land dedication and "in lieu fees" provisions of section 11546. When Municipal Code section 8-1716 was enacted, Business and Professions Code section 11535.1 provided that " 'subdivision' includes a condominium project, . . ." The City must reasonably be presumed to have used that meaning in enacting its ordinance. And section 8-1716 expressly stated that the "subdivider" of such subdivisions "shall dedicate a portion of the land in the subdivision, or pay a fee in lieu of such dedication."

Furthermore it appears that the "local zoning ordinances" adverted to by Civil Code section 1370 are such ordinances as were enacted under Government Code, title 7, chapter 4 (§§ 65800-65907), entitled "Zoning Regulations." Section 65802 of that code provided that ". . . no provisions of any other code or statute shall restrict or limit the procedures provided in this chapter by which the legislative body of any . . . city enacts, amends, administers, or provides for the administration of any zoning law, ordinance, rule or regulation." Section 11546 was found

in a different code (Bus. & Prof.) in a chapter entitled "Subdivision Map Act"; instead of dealing with zoning ordinances or regulations, it must reasonably be deemed a "revenue" statute designed for the acquisition of needed municipal park lands. The type of ordinance authorized by section 11546 may therefore not reasonably be considered as a "local zoning ordinance" contemplated by Civil Code section 1370.

We are aided in this conclusion by the holding of *Associated Home Builders etc., Inc.* v. *City of Walnut Creek, supra,* 4 Cal.3d 633, 638-639, that statutes such as section 11546 "must be upheld whenever possible in order to effectuate [the] salutary purposes" of article XXVIII of the state's Constitution. This purpose is the acquisition and maintenance of "open space lands" for, among other things, "the economic and social well-being of the state and its citizens."

Norsco also relies on a paragraph of Fremont Municipal Code section 8-22106.3[2] which closely follows Civil Code section 1370, in this manner: "(c) Except as provided in this section, any use of a structure, lot, or parcel, otherwise allowed pursuant to the regulations applicable in the particular zoning district involved, shall not be treated differently because the ownership thereof is divided by sale of condominiums rather than by lease of apartments, offices or stores."

Section 8-22106.3 is an ordinance requiring that condominium projects shall obtain conditional use permits. Its paragraph (b) recites: "(b) No condominium development (including conversion of an existing multiple unit or other structure into condominium ownership) shall be established, operated, set up, enlarged, converted or maintained, unless and until a conditional use permit therefor has been obtained. No such permit shall be issued unless the applicable zoning district regulations otherwise allow multiple occupancy for the uses requested upon a single

[2]Paragraph (a) of Fremont Municipal Code section 8-22106.3, which is not immediately relevant, recites: "(a) Because, inter alia there is a lack of guaranteed effective and continuous centralized management of each condominium development, and a lack of adequate construction performance standards relating to multiple unit structures, concerning such matters as noise transmission between units, and because such matters, if not given sufficient consideration in the creation of condominium developments may create and perpetuate conditions having an especially deleterious effect upon the occupants of condominium units, the pernicious effects of which may be especially magnified in view of the fact that such occupants are the owners of such units and may be less able to freely transfer ownership to others, (particularly at times when undesirable conditions are in existence), it is hereby found that each condominium presents special land use problems involving potential slum and blight conditions which would be detrimental to the public health, safety, welfare, and economic prosperity of the community."

parcel of land." This ordinance was enacted under the authority of *Government Code* section 65901 which, as has been pointed out, is found in title 7, chapter 4, of that code, entitled "Zoning Regulations." It is the sort of "local zoning ordinance" to which Civil Code section 1370 refers. Section 8-22106.3(c) may not reasonably be deemed to relate to the "revenue" ordinances authorized by Business and Professions Code section 11546.

 As has been indicated, Norsco appears to have no complaint against section 11546 and the City's implementing ordinance insofar as they require land dedication or "in lieu fees" from planned future condominium projects, reasonably calculated to bring new residents into the area. But it contends that it has suffered a denial of *equal protection of the laws,* because here the City has treated "like things differently—imposing a park fee upon the conversion of an apartment house into condominiums, but not upon the identical structure as an apartment house." It insists that its condominium project must be treated as an existing apartment house composed of rental units, neither of which already populated structures is calculated to bring *new residents,* in need of park and recreational facilities, into the area.

The contention overlooks the clearly expressed rationale of *Associated Home Builders etc., Inc.* v. *City of Walnut Creek, supra,* 4 Cal.3d 633. The court (pp. 639-640) saw "no persuasive reason . . . to hold that a statute requiring the dedication of land by a subdivider may be justified only upon the ground that the particular subdivider upon whom an exaction has been imposed will, solely by the development of his subdivision, increase the need for recreational facilities." Instead, it concluded (p. 638), "that section 11546 can be justified on the basis of a general public need for recreational facilities caused by *present and future subdivisions."* (Italics added.)

Moreover, we find no unconstitutional legislative discrimination, as claimed by Norsco, in classifying differently, existing apartment buildings with rental units and similar apartment buildings for which the owner seeks municipal authorization for subdivision into condominium units. "[T]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none." (*Silver* v. *Silver,* 280 U.S. 117, 123 [74 L.Ed. 221, 226, 50 S.Ct. 57, 65 A.L.R. 939]; *Werner* v. *Southern Cal. etc. Newspapers,* 35 Cal.2d 121, 132 [216 P.2d 825, 13 A.L.R.2d 252].)

■ Nor is there any "constitutional requirement of uniform treatment" (*Estate of Horman*, 5 Cal.3d 62, 75 [95 Cal.Rptr. 433, 485 P.2d 785] [cert. den., 404 U.S. 1015 [30 L.Ed.2d 662, 92 S.Ct. 672]]); "Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment" (*Norvell* v. *Illinois*, 373 U.S. 420, 423 [10 L.Ed.2d 456, 459, 83 S.Ct. 1366]). "[S]ome classification is inevitable and constitutionally permissible. . . ." (*People* v. *Pearce*, 8 Cal.App.3d 984, 988 [87 Cal.Rptr. 814].) "The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free . . . to confine its regulation to those classes of cases in which the need is deemed to be the most evident." (*Board of Education* v. *Watson*, 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].) ■ " 'The prohibition against special legislation does not preclude classification, but only requires that the classification be reasonable.' " (*Hensley* v. *Peace Officers Training Fund*, 22 Cal.App.3d 933, 939 [99 Cal.Rptr. 728].) A legislative classification is reasonable " 'if any set of facts reasonably can be conceived that would sustain it.' " (*Mathews* v. *Workmen's Comp. Appeals Bd.*, 6 Cal.3d 719, 739 [100 Cal.Rptr. 301, 493 P.2d 1165].) ■ " 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary.' " (*Estate of Horman*, *supra*, 5 Cal.3d 62, 75.)

■ Rational justification for the here criticized legislative classification appears to us. It seems not unreasonable that an apartment house owner seeking, for his presumable economic advantage, the City's permission to convert his already occupied rental units into condominiums, be assessed a reasonable amount for additional park and recreational facilities in the neighborhood. And we note the conclusion of the City, expressed in Fremont Municipal Code section 8-22106.3 (see fn. 2, *ante*), that, unlike apartments with rental units, condominium developments, with a "lack of guaranteed effective and continuous centralized management" and often other shortcomings, present "special land use problems involving potential slum and blight conditions." These and perhaps other such considerations were undoubtedly before the Legislature; its classification was not palpably erroneous or arbitrary, and it must therefore be upheld. (See *Estate of Horman*, *supra*, 5 Cal.3d 62, 75.)

■ There is another issue presented for our determination. The City, as indicated, levied "in lieu fees" on Norsco in the amount of $17,650. The amount was based upon an appraisal of the subject real property as improved land. Treated as unimproved land, the assessment would have been $11,500. Had the City required "dedication of land" according to section 11546 such land would necessarily have been unimproved. The City having instead taken "*in lieu* fees," it seems reasonable that such fees be of an amount equal to the value of the unimproved land for which they were substituted. We construe section 11546, and its implementing section of the Fremont Municipal Code, as requiring the lesser assessment of $11,500.

The judgment is reversed. The superior court will enter judgment in favor of the City of Fremont in a manner not inconsistent with our opinion.

Molinari, P. J., and Sims, J., concurred.