[Civ. No. 48310. Second Dist., Div. Three. Mar. 15, 1977.]

BERTHA COFFINEAU et al., Plaintiffs and Appellants, v.
MARCH K. FONG EU, as Secretary of State, etc., et al.,
Defendants and Appellants.

**COUNSEL**

John J. Schimmenti and J. B. McGuire for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, John H. Larson, County Counsel, and Charles J. Moore, Deputy County Counsel, for Defendants and Appellants.

Mark C. Allen, Jr., City Attorney (Palos Verdes Estates), and Burke, Williams & Sorensen and Colin Lennard as Amici Curiae.

**OPINION**

**FORD, P. J.**—On August 19, 1975, petitioners filed a petition for a writ of mandate directed to respondents Secretary of State of the State of California (hereinafter the Secretary of State), the Board of Supervisors of the County of Los Angeles and the members thereof (hereinafter the Board), the County Recorder of the County of Los Angeles (hereinafter the County Recorder), the City of Rancho Palos Verdes and the members of the City Council of the City of Rancho Palos Verdes (hereinafter the City), and the City Clerk of the City of Rancho Palos Verdes (hereinafter the City Clerk).

In a special election held in the City on November 5, 1974, 8,825 electors (63.96 percent) voted "Yes" and 4,973 electors (36.04 percent) voted "No" on City Measure RR, which was as follows: "Shall the name of the City of Rancho Palos Verdes be changed from the City of Rancho Palos Verdes to City of Palos Verdes." On or about December 4, 1974, the City submitted a statement of the holding of the November 5, 1974, election and the result thereof to the Secretary of State and to the Board.[1] On or about March 27, 1975, the Board refused to file the statement and returned it to the City. On or about April 23, 1975, the Secretary of State refused to file the statement and returned it to the City.[2]

Petitioners sought a writ of mandate commanding (a) the City to forward a statement of the election and its result to the Board and to the Secretary of State, (b) the Secretary of State and the Board to file the statement and return certificates of such filing to the City, (c) the City Clerk to file an affidavit of completion of the name change with the County Recorder in accordance with the provisions of Government Code section 34080, and (d) the County Recorder to record the affidavit and return evidence of such recordation to the City.

Upon the hearing of the petition the superior court's primary conclusion of law was that Government Code section 34507 is unconstitutional under the Constitution of the State of California in that it denies general law cities and their electors equal protection of the laws because voters of a chartered city may change its name by a simple majority vote.[3] The court determined that, accordingly, the special election held on November 5, 1974, on City Measure RR was invalid.

[1]Government Code section 34507 is as follows: "If two-thirds of the total votes cast at the election are in favor of the proposed change of name, the legislative body shall file a statement of the holding of the election and the result with the Secretary of State and with the board of supervisors of the county in which the city is situated. From the date of filing, the name is changed."

[2]Government Code section 34080 is in pertinent part as follows:

"The clerk of the legislative body conducting the proceeding shall record with the recorder of the county in which the city is located, an affidavit stating that all requirements of law pertaining to the proceeding have been complied with, if it relates to:

". . . . . . . . . . . . . . .

"(c) Change of name of a city, . . .

"The affidavit shall have attached to it the certificate of the Secretary of State describing the document filed in his office which is required to complete the proceedings, and the date of such filing."

[3]Government Code section 34500 provides as follows: "The provisions of this chapter do not apply to chartered cities." Section 34507 is in the chapter designated.

In the judgment it was ordered that a peremptory writ of mandate issue commanding that respondents City and the members of its City Council and the City Clerk "shall not refrain from accepting an appropriate petition from qualified electors of the City of Rancho Palos Verdes to cause an election regarding the change of name of said City of Rancho Palos Verdes to be placed upon the ballot," and further commanding that all respondents "shall require only a simple majority at any election so held to be determinative of the issue of the change of name of said City of Rancho Palos Verdes for the accomplishment of all actions required by law resulting from such election."

Notices of appeal from the judgment were filed by the Board and the Secretary of State. A notice of cross-appeal was filed by petitioners, who contend that the judgment should be reversed insofar as it determined that the November 5, 1974, election on City Measure RR was not legally effective.

The California Constitution provides in pertinent part as follows: "(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. . . . [¶] It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: . . . (3) conduct of city elections . . . ." (Cal. Const., art. XI, § 5; formerly §§ 6, 8, subd. (j).) ■ As stated in *Rivera* v. *City of Fresno,* 6 Cal.3d 132, at page 135 [98 Cal.Rptr. 281, 490 P.2d 793]: "Accordingly, the city is empowered to exercise full control over its municipal affairs, unaffected by general laws on the same subject matters and subject only to limitations found in the Constitution and the city charter."

On the other hand, a general law city has only those powers expressly conferred upon it by the Legislature, together with such powers as are necessarily incident to those expressly granted or essential to the declared object and purposes of the municipality. The powers of such a city are strictly construed, so that "any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation." (*Irwin* v. *City of Manhattan Beach,* 65 Cal.2d 13, 20-21 [51 Cal.Rptr. 881, 415 P.2d 769]; *Norsco Enterprises* v. *City of Fremont,* 54 Cal.App.3d 488, 493 [126 Cal.Rptr. 659].)

Thus the California Constitution provides for the existence of two distinct classes of cities, namely, chartered cities and general law cities. The problem presented in the instant case is not the constitutional validity of such classification but rather whether Government Code section 34507 unconstitutionally interferes with the fundamental rights of petitioners as residents of a general law city in that it requires a favorable two-thirds vote to change the name of their city whereas a chartered city may provide in its charter that only a majority vote or less than a two-thirds favorable vote is sufficient to accomplish that purpose.

The basic question to be resolved is whether there is any constitutional proscription against a requirement of more than a majority vote to bring about a change in name such as that sought by petitioners in the present case. That no such proscription exists is evident from the reasoning of the United States Supreme Court in *Gordon* v. *Lance,* 403 U.S. 1 [29 L.Ed.2d 273, 91 S.Ct. 1889].

In *Gordon* v. *Lance,* the challenge was to a 60 percent favorable vote requirement to incur public debt as violative of the Fourteenth Amendment. The Supreme Court stated (403 U.S. at pp. 5-6 [29 L.Ed.2d at p. 276]): "Although West Virginia has not denied any group access to the ballot, it has indeed made it more difficult for some kinds of governmental actions to be taken. Certainly any departure from strict majority rule gives disproportionate power to the minority. But there is nothing in the language of the Constitution, our history, or our cases that requires that a majority always prevail on every issue." The court further stated (403 U.S. at p. 7 [29 L.Ed.2d at p. 277]): "We conclude that so long as such provisions do not discriminate against or authorize discrimination against any identifiable class they do not violate the Equal Protection Clause."

In the case presently before this court the requirement of a two-thirds favorable vote did not discriminate against or authorize discrimination against any identifiable class of citizens in the city herein involved. (See *Weber* v. *City Council,* 9 Cal.3d 950, 960 [109 Cal.Rptr. 553, 513 P.2d 601]; *Lefkovits* v. *State Board of Elections* (N.D. Ill. 1975) 400 F.Supp. 1005, 1009-1016, affd. on appeal, 424 U.S. 901 [47 L.Ed.2d 306, 96 S.Ct. 1092].) Our California Constitution recognizes the propriety of requiring more than a majority vote in an appropriate situation. Thus in article XI, which is concerned with local government, it is provided in section 1 that "[n]o county seat shall be removed unless two-thirds of the

qualified electors of the county, voting on the proposition at a general election, shall vote in favor of such removal."

We conclude that in the light of the law governing the factual situation presented in the instant case, fundamental voting rights of petitioners have not been violated by the requirement of a two-thirds favorable vote in order to effect a change of name of the city. Consequently, the test to be applied in examining the constitutional validity of Government Code section 34507 is that set forth in *Weber* v. *City Council, supra,* 9 Cal.3d 950, at pages 958-959: "In ordinary equal protection cases not involving suspect classifications or the alleged infringement of a fundamental interest, the classification is upheld if it bears a rational relationship to a legitimate state purpose." We turn to the application of that test.

■ A city election is a municipal affair and in a chartered city the applicable charter provisions prevail over the general law. (*Rees* v. *Layton,* 6 Cal.App.3d 815, 820-822 [86 Cal.Rptr. 268].) The change of name of a city is manifestly a municipal affair. In the case of a chartered city, whether the vote necessary to effect such a change shall be a majority vote or a two-thirds favorable vote is a matter properly governed by the provisions of the charter. In short, the matter is in the hands of the residents of the home rule city.

■ But in the case of a general law city, the determination of the requirements as to a change of name is within the province of the Legislature. The rule established must of necessity be a uniform one with respect to all general law cities. Since the change of a city's name has a very significant impact upon businesses in the city and in greater or lesser degree upon its individual residents, the Legislature has a broad discretion in determining the extent of the vote to be required to effect such a change. It was not unreasonable to require a two-thirds favorable vote since a requirement of a bare majority could subject a city to successive changes because of a shift of opinion on the part of a comparatively small number of voters. A change of name is a matter of serious consequence not to be lightly undertaken. ■ As stated in *Estate of Horman,* 5 Cal.3d 62, at page 75 [95 Cal.Rptr. 433, 485 P.2d 785]: " 'A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' "

██ █ Since the challenged provision of Government Code section 34507 is not arbitrary but bears a rational relationship to a legitimate state purpose, there is no violation of the concept of equal protection.[4] Consequently, petitioners are not entitled to the relief which they seek.

The judgment is reversed with directions to the superior court to enter judgment denying a peremptory writ of mandate. Appellants and cross-respondents shall recover their costs on appeal as against respondents and cross-appellants.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied April 6, 1977, and the opinion was modified to read as printed above. The petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied May 12, 1977.

---

[4]Petitioners' position that Elections Code section 63 (now § 54) governs rather than Government Code section 34507 is untenable. When a special and a general statute are in conflict, the former governs. (*Agricultural Labor Relations Bd.* v. *Superior Court,* 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687]; *People* v. *Gilbert,* 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].)