[No. D002990. Fourth Dist., Div. One. Sept. 19, 1985.]

JONATHAN WILTSHIRE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CITY OF SAN MARCOS et al., Real Parties in Interest.

**COUNSEL**

Gray, Cary, Ames & Frye and Michael M. Hogan for Petitioner.

Clark & Gumpel, Robert C. Fellmeth and Corinne D. Clark as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

F. Mackenzie Brown, Warren B. Diven, Smith & Peltzer, Wesley W. Peltzer, Lloyd M. Harmon, Jr., County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Real Parties in Interest.

**OPINION**

**BUTLER, J.**—Rebuffed in his efforts to block approval by public agencies of construction of a solid waste disposal facility in the City of San Marcos, Jonathan Wiltshire successfully qualified an initiative measure to require voter approval of construction of such facilities and a special election was set for April 30, 1985. Proponents of the facility sought and the court issued its writ of mandate ordering the city to repeal the ordinance setting the election and to cease any implementation of the initiative. The election was cancelled and Wiltshire filed his petition with us for a writ of mandate. We shall treat the writ as an appeal, conclude the initiative impermissibly seeks to lodge adjudicatory powers in the electorate and is preempted by state law.

I

In enacting the Nejedly-Z'berg-Dills Solid Waste Management and Resource Recovery Act of 1972 (the Act), the Legislature found the increasing volume and variety of solid wastes generated throughout the state, coupled with inadequate existing methods of disposing of solid wastes, threatened the public health, safety, and well-being. The Legislature found solid waste management required reduction, recovery, conversion and recycling essential to public health, safety and well-being. The Legislature declared it in the public interest to establish a comprehensive state solid waste management and resource recovery policy to manage solid wastes to protect the public, the environment and the reutilization and conversion of the resources contained in solid wastes. (Gov. Code,[1] §§ 66700-66702.)

The Act placed primary responsibility on the state to develop and maintain state policy for solid waste management and primary responsibility on local government for adequate solid waste management and planning in

---

[1]All statutory references are to the Government Code unless otherwise specified.

compliance with section 66780.1 (§ 66730). Local agencies are required to make adequate provisions for solid waste handling and their actions in that respect are in implementation of state policy (§§ 66755, 66756). Local agencies are empowered to determine the nature and location of solid waste handling services and how such services are to be provided by franchise, contract, license, permit or otherwise, exclusive or nonexclusive, and on such terms and conditions as may be determined by the agency by resolution or ordinance (§ 66757). The California Waste Management Board (Board) adopts statewide standards for solid waste management including location, design, operation, maintenance and reuse of solid waste processing or disposal facilities. These statewide standards do not include local aspects of solid waste handling or disposal not determined by the Board to be of statewide concern such as frequency and means of collection, level of service, charges and fees and purely aesthetic considerations (§ 66771).

Decisions involving the establishment of solid waste facilities require plans that identify and reserve sites (§ 66780, subd. (b)(1)). Each county is required to prepare a comprehensive solid waste management plan consistent with state policy for all waste disposal within the county. The plan must be approved by a majority of the cities in the county which contain a majority of the county's population and by the Board (§§ 66780, 66780.1, 66780.7). The site or potential site of a solid waste facility must be consistent with the general plan of the county and of the city if there located (§§ 66780.2, 66784, 66784.2, 66796.41).

The Legislature has declared and encouraged the conversion of solid wastes into energy, synthetic fuels and reusable materials as a matter of policy (§ 66786).

Having sketched state legislative policy and procedures in the planning for and the implementation of concepts for the disposal of solid wastes and their conversion into energy and other products, we look at the history of the San Marcos facility and the initiative measure against that background.

## II

In 1982, San Diego County (the County) amended its Solid Waste Management Plan in accordance with state law. This plan was approved by the 16 cities, including San Marcos, in San Diego County with a majority of the County electorate. The plan was also approved by the Board.

The San Diego County plan proposed development of four resource recovery projects by 1990. One project was planned for North County. That project is the subject of this litigation.

In the fall of 1982, the County entered into a contract with the predecessor to North County Resource Recovery Associates (NCRRA) for design, construction and operation of a solid waste disposal facility (the facility) designed to convert waste to energy on a part of a landfill site owned by the County in San Marcos. NCRRA obtained necessary environmental and other permits and commenced proceedings to obtain a special use permit from San Marcos. Wiltshire's efforts with various public agencies to derail the waste-to-energy disposal facility were unsuccessful.

He caused to be prepared and circulated for signature an initiative measure which would require a two-thirds vote of the San Marcos electorate approving the location, construction or establishment of waste-to-energy plants.[2] The city council issued a special use permit authorizing construction of the facility. Wiltshire secured the required signatures to the petition, and the city council set a special election on the initiative for April 30, 1985. On February 14, 1985, NCRRA filed a petition for a writ of mandate or other injunctive relief to halt the election. On March 29, 1985, the superior court issued the writ and the city thereafter cancelled the election.

## III

When the petition for mandamus was filed here, a writ was the only remedy to provide the requested relief, i.e., place the proposed initiative back on the ballot for the April 30 election. Since it is now past April 30, the reason no longer exists.

With consent of the parties, we treat the petition for a writ of mandate as an appeal and resolve the matter on the merits.

---

[2]The initiative reads in full as follows: "To ensure that solid waste management facilities are located, operated and terminated so as to protect the public health, safety and welfare and to preserve the environmental and financial resources of the City of San Marcos, the people of the City of San Marcos do hereby ordain as follows:

"*Section I*: No waste-to-energy plant shall be located, constructed or otherwise established in the City of San Marcos except upon the approval of two-thirds of the registered voters casting ballots thereon. Before submitting any proposed waste-to-energy plant to the voters for approval, the City Council of San Marcos shall undertake and publish a thorough analysis of the actual health, safety, environmental and financial impacts of a waste-to-energy plant of similar size and technology located in at least one other municipality in the State of California.

"*Section II*: No solid waste landfill operation shall be located, constructed, expanded, or otherwise established in the City of San Marcos except upon the agreement of the operator of such landfill to dedicate the property upon which such landfill is located for public park or open space purposes once landfill operations cease thereon.

"*Section III*: No part of this ordinance may be amended or repealed except by the voters of the City of San Marcos at a regular municipal election.

"*Section IV*: If any portion of this ordinance is declared invalid, the remaining portions are to be considered severable and valid."

IV

We consider whether preelection review of the proposed initiative is appropriate. The initiative power is " 'one of the most precious rights of our democratic process' [citation]." (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *Coalition for Fair Rent* v. *Abdelnour* (1980) 107 Cal.App.3d 97, 103-104 [165 Cal.Rptr. 685].) Courts have repeatedly stressed it is more important to review challenges to initiative measures after an election rather than to disrupt the electoral process by preventing exercise of the people's right to vote. (*Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 4 [181 Cal.Rptr. 100, 641 P.2d 200].) An exception to this judicial restraint arises on a showing the proposed initiative is beyond the power of the voters to adopt or is not legislative in character. (*American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 696-697 [206 Cal.Rptr. 89, 686 P.2d 609].) Such a showing has been made. The initiative falls within the exception and pre-election review is proper.

V

Section I of the initiative requires the approval of two-thirds of the San Marcos electorate for the location, construction or other establishment of a waste-to-energy plant. As we shall demonstrate, section I impermissibly withdraws from the city council and lodges in the electorate adjudicatory powers with respect to the issuance of conditional use permits for the location, construction or other establishment of a waste-to-energy plant.[3]

San Marcos is a general law city. "[G]eneral law cities are simply creatures of the state and as such are parts of the machinery by which the state conducts its governmental affairs." (*Williams* v. *City of San Carlos* (1965) 233 Cal.App.2d 290, 295 [43 Cal.Rptr. 486].) A general law city has only those powers expressly conferred upon it by the Legislature and such other powers as are necessarily incident to those expressly granted or essential to municipal purposes. Any reasonable doubt concerning the extent of such power is resolved against the city (Cal. Const., art. XI, § 2; *Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 20-21 [51 Cal.Rptr. 881, 415 P.2d 769]; *Coffineau* v. *Eu* (1977) 68 Cal.App.3d 138, 142-143 [137 Cal.Rptr. 90]).

San Marcos city government is vested in the five-member city council[4] which is authorized to enact ordinances and resolutions by a vote of at least

---

[3]We need not address other difficulties we perceive in the initiative such as the meaning of the phrase "waste-to-energy plant," and the definitional problem inherent in the required analysis of the "actual health, safety, environmental and financial impacts of a . . . plant of similar size and technology . . ." located in another California city. We reach NCRRA's further argument the state law preempts the initiative only as to section II of the initiative.

[4]Section 36501 includes a city clerk, a city treasurer, a chief of police and a fire chief as persons in whom government is vested.

three members (§§ 36501, 36936, 37100). The city council is empowered to adopt zoning ordinances and regulate land use (§§ 65100, 65850) and the planning and zoning provisions of state law included in sections 65000-66400 et seq. apply to the city (§ 65803) unrestricted by other provisions of the Government Code or other codes (§ 65802).

The San Marcos City Council has adopted a zoning ordinance which requires a special use permit for all solid waste management facilities, including landfills and waste-to-energy plants. The applicant for a special use permit must comply with environmental requirements and master and specific plans. The planning commission is the hearing agency and must make findings to support issuance of a special use permit. Its decision may be appealed to the city council whose decision, after public hearing, likewise must be supported by factual statements. NCRRA applied for a special use permit to construct and operate the facility and secured all necessary approvals from regulatory agencies. The planning commission ordered issuance of the special use permit with appropriate findings. On Wiltshire's appeal, the city council, after public hearings, affirmed the grant of the special use permit again supported by adequate findings.

 As we have seen, section I of the initiative prohibits waste-to-energy plants except upon approval, by a two-thirds vote of the electorate, of such a plant which has been analyzed as to the health, safety, environmental and financial impacts of a plant of similar size and technology located in at least one California city. The initiative withdraws from the San Marcos City Council the power to issue a special use permit in compliance with its zoning ordinance and requires a two-thirds electorate vote to approve the issuance of a special use permit in each instance. This is impermissible. Special use permits are issued or denied by the city council in the exercise of its adjudicatory powers. They are not issued or denied as a function of the council's legislative powers. While the initiative process reserves to the people the power to enact legislation on appropriate subjects, that power so reserved by the initiative does not include the exercise by the people of an adjudication of issues.

 A special use permit allows a particular use not permitted under a zoning ordinance if that use promotes the public welfare and does not impair the character of the zoned area (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 484, p. 3783). Special use permits within a zoning pattern allow uses considered to be desirable to a community but which, by their nature, such as noise, traffic or size, militate against their existence in every location within a zone or in any location without restrictions tailored to fit the special problems which the use presents (8 Hagman & Volpert, Cal. Real Estate Law and Practice (1985) Zoning and Land Use Control, § 265.50).

■ Enactment of a zoning ordinance is a legislative act to be distinguished from the granting or denial of a special use permit. (*Tandy* v. *City of Oakland* (1962) 208 Cal.App.2d 609, 611 [25 Cal.Rptr. 429].) The award of a special use permit is characterized as an act adjudicatory in nature requiring notice and an opportunity to be heard (*San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 212-213 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517) [113 Cal.Rptr. 836, 522 P.2d 12].[5]

■ The parties concede San Marcos' zoning ordinance requires a special use permit for waste-to-energy plants. The grant of such permit is an act adjudicatory in nature. The initiative gives to the electorate of San Marcos the right to approve by a two-thirds vote the issuance of the special use permit. In the exercise of that electoral right, there is obviously no opportunity for the notice and hearing and factual findings required in the adjudicatory process (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at pp. 515-516). While it is true the notice and hearing procedures required by statute in the enactment of zoning ordinances by a city council do not invalidate a zoning ordinance adopted by the public through the initiative (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at pp. 590-591, 596), it does not follow that legislation mandating electorate approval of adjudicatory action is likewise valid. The initiative says a waste-to-energy plant cannot be sited in San Marcos unless two-thirds of the voters approve. Such plants can be sited only through the issuance of a special use permit. Those permits are the product of the adjudicatory process. Due process of law in that setting requires notice and hearing (*San Diego Bldg. Contractors Assn.* v. *City Council, supra,* 13 Cal.3d at p. 211). Section I of the initiative denies those rights by lodging adjudicatory powers in the electorate and is thus invalid.

## VI

■ Section II of the initiative prohibits the location, construction, expansion or other establishment of solid waste landfill operations except upon agreement of the owner to dedicate the landfill property for public park or open space once the operations cease. San Marcos, as a general law city, is subject to state statutes. The San Marcos zoning ordinance allows landfill operations upon issuance of special use permits. Section 65909 reads in pertinent part: "No local governmental body, or any agency thereof, may condition the issuance of any building or use permit or zone variance on any or all of the following:

---

[5]Statutes, ordinances, the cases and we refer to conditional use permits as synonymous with special use permits.

"(a) The dedication of land for any purpose not reasonably related to the use of the property for which the variance, building, or use permit is requested." Section II runs aground on the shoals of preemption, i.e., the occupancy by state law of a matter such that local laws are deemed inoperative.

Section II is in direct conflict with the County solid waste disposal plan, adopted pursuant to the Solid Waste Management and Resource Recovery Act. As we have seen, the Legislature recognized that solid waste management is a matter of statewide concern, which could be effectively treated only through a comprehensive statewide policy (§ 66702). The Legislature placed responsibility in local government and the state as to solid waste management (§ 66730). Local solid waste management and planning must conform with a county plan developed in coordination with the county cities. The state scheme for solid waste management and disposal and the implementation of that scheme through adoption of county plans does not contemplate nor require dedication of a landfill operation for a public park or open spaces upon cessation of operations. While dedication of property for street purposes as a condition to issuance of a building permit to accommodate the increase in traffic occasioned by the proposed improvement is proper (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 124-125 [109 Cal.Rptr. 799, 514 P.2d 111]) the initiative dedication requirement, i.e., the taking of landfill property upon cessation of use, is the price a landowner or operator must pay in the implementation of state and local solid waste disposal plans. That price is clearly prohibited by the state statute (§ 65909).

Section II engrafts an impermissible condition on state and local solid waste disposal management, an area preempted by the Act and is thus unenforceable and void.

Order affirmed.

Wiener, Acting P. J., and Work J., concurred.