[Civ. No. 68626. Second Dist., Div. Seven. Dec. 9, 1983.]

AVEDIS KALAYDJIAN et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Klarfeld & Prescott and Michael R. Prescott for Plaintiffs and Appellants.

Ira Reiner, City Attorney, William B. Burge and Claudia McGee Henry, Assistant City Attorneys, for Defendant and Respondent.

OPINION

**THOMPSON, J.**—Plaintiff Avedis Kalaydjian appeals from a judgment in favor of the City of Los Angeles finding that Kalaydjian was not entitled to recover amounts paid under section 47.06 of the Los Angeles Municipal Code, entitled "Tenant Relocation Assistance Where Apartments Are to be Converted."

In December 1979, the Los Angeles City Council adopted several measures requiring landlords who converted apartments to condominium or other specified uses to furnish relocation assistance to displaced tenants. Section 47.06, subsection (C), of the Los Angeles Municipal Code provides, in part, that "[i]n connection with the conversion of a building into a condominium, . . . hotel or . . . use permitted in any commercial zone, the landlord shall provide relocation assistance to each tenant in accordance with Subsection D." Subsection (D), subparagraph 1 a (4), provides for a two-level relocation assistance fee of $2,500 to "qualified tenants" and $1,000 to all other tenants. "Qualified tenants" are defined as tenants over the age of 62, disabled tenants and tenants with dependent minor children.

Kalaydjian purchased a 10-unit apartment house which he planned to convert to a commercial use. He paid $14,500 in relocation expenses to tenants in the building. Kalaydjian later sought reimbursement of the $14,500 from the city.

Kalaydjian contends that Los Angeles Municipal Code section 47.06 violates the equal protection and due process clauses of the federal and state Constitutions. It is asserted that the means used to compensate tenants are unreasonable because the amounts exacted bear no relationship to each tenant's actual cost of relocation. It is further asserted that the measure creates an arbitrary classification, violative of equal protection, by excluding "luxury housing."

"So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever

economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied . . . ." (*Nebbia* v. *New York* (1934) 291 U.S. 502, 537 [78 L.Ed. 940, 957, 54 S.Ct. 505, 89 A.L.R. 1469]; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 155 [130 Cal.Rptr. 465, 550 P.2d 1001].)

■ Imposition of relocation fees is within the power of the city. In *Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31, 42 [207 P.2d 1, 11 A.L.R.2d 503], the court suggested: "It is the petitioner who is seeking to acquire the advantages of lot subdivision and upon him rests the duty of compliance with reasonable conditions for design, dedication, improvement and restrictive use of the land so as to conform to the safety and general welfare of the lot owners in the subdivision and of the public."

Los Angeles Municipal Code section 47.06, subsection A, provides in its statement of purposes: "At the present time, there is a critically short supply of rental housing in the City of Los Angeles. Many rental housing units have been removed from the rental market through conversion to condominiums, stock cooperatives, community apartment projects, hotels and commercial uses. Tenants who are evicted due to conversion are experiencing serious difficulties in locating comparable replacement rental housing . . . . [¶] Since the conversion of rental units to condominiums, . . . hotels and commercial uses is a substantial cause of the rental housing shortage, the City Council finds and declares that it would be just and proper for the subdividers who may enjoy the benefits of such conversions to assist tenants who are displaced by the conversion activity . . . ."

The city could reasonably conclude that changes in use of residentially zoned property adversely affect the community's rental stock. The city could reasonably conclude further that the fee exacted from those benefitting from the changed use cushions the displacement effect of that changed use. Developers benefitting from zoning changes granted by the community may be required to pay for the adverse effects of those changed uses. Just as a subdivider may be required to dedicate land to alleviate an increase in traffic caused by the subdivision, the developer may be required to alleviate displacement and other adverse effects of a zoning conversion. "[W]here it is a condition reasonably related to increased traffic and other needs of the proposed subdivision it is voluntary in theory and not contrary to constitutional concepts." (*Ayres* v. *City Council of Los Angeles, supra,* 34 Cal.2d at p. 42.)

Moreover, the means employed to assist in relocation of the displaced tenants are not unreasonable. The city could reasonably base the fees on average relocation costs at the time of enacting the measure. The fees imposed are on a per unit basis, with a higher payment provided for "qualified tenants." Rent control in Los Angeles provides for decontrol each time a tenant vacates an apartment. Tenants displaced by conversion would be removed from rent controlled dwellings and be required to find dwellings with higher market rents. Neither the $1,000 nor the $2,500 payments can be regarded as unreasonable. It is not necessary for the city to ascertain precisely each tenant's relocation costs. It is sufficient that the city imposes a reasonable per unit fee.

Further, Kalaydjian fails to note that subsection D, subparagraph 1 b, of the provision in fact provides the landlord with an *actual cost option.* That part of the provision provides: "In lieu of the assistance provided for in Paragraph a above, the landlord may elect to relocate any tenant into a comparable replacement rental unit satisfactory to the tenant and pay all actual costs of relocating the tenant up to a maximum of $2,500 per household. A tenant may not unreasonably withhold approval of a replacement rental unit offered by the landlord. For purposes of this provision only, comparability shall be determined from the following factors: size; price; location; . . ." Thus, while the means are attacked as arbitrary and inexact, Kalaydjian has the option under the ordinance to relocate the tenants on an actual cost basis.

■ We find Kalaydjian's complaint that exclusion of "luxury housing" from the measure violates equal protection to be also without merit. ■ " '[T]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none.' [Citations.]" (*Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488, 497 [126 Cal.Rptr. 659].)

". . . . The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but it is free . . . to confine its regulation to those classes of cases in which the need is deemed to be the most evident." (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481]; *Norsco Enterprises* v. *City of Fremont, supra,* 54 Cal.App.3d at p. 498.)

■ Here, it may be concluded that there is reasonable justification for the city's distinction between ordinary and "luxury" housing. First, "luxury housing" is exempt under the city's rent control ordinance. Thus, tenants displaced from "luxury" housing are presumably already paying mar-

ket rents. Moreover, the city could reasonably find that tenants able to afford higher-priced housing do not require financial assistance in finding alternate housing.

The judgment is affirmed.

Schauer, P. J., and McVittie, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.