[No. A028579. First Dist., Div. One. Jan. 26, 1987.]

LEAVENWORTH PROPERTIES, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Respondents.

COUNSEL

Cooper, White & Cooper, Neil L. Shapiro, Kaus & Kerr, James M. Wagstaffe and R. Barry Churton for Plaintiff and Appellant.

George Agnost and Louise H. Renne, City Attorneys, Andrew W. Schwartz and Paula A. Jesson, Deputy City Attorneys, for Defendants and Respondents.

OPINION

NEWSOM, J.—In this appeal plaintiff challenges the constitutionality of San Francisco's moratorium on condominium conversions. As will be discussed, we find the appeal to be without merit and affirm the judgment.

The factual background may be summarized as follows:

Plaintiff Leavenworth Properties, a joint venture and general partnership, is the owner of a 36-unit apartment building at 2200 Leavenworth Street in San Francisco. Plaintiff's desire to convert its building to condominiums has been frustrated by San Francisco's ordinances pertaining to condominium conversions.

As initially enacted in 1979, the condominium conversion ordinance called for conversion of a maximum of 1,000 units per calendar year. The ordinance established a registration procedure to create a waiting list for future years. (S.F. Mun. Code, § 1396.) In February 1982, interested property owners were invited to register for the opportunity to convert in 1983. In March 1982, plaintiff Leavenworth Properties registered and was given priority number 83-23.

In September 1982, plaintiff was notified that there were openings in the *1982* quota of 1,000 so that its application for conversion would be accepted. However, plaintiff did not submit its application to convert until December 31, 1982. By that time, the condominium conversion ordinance had been amended. On December 13, 1982, the board of supervisors adopted, and on December 24, the mayor approved, new language which essentially set up a three-year moratorium on conversions. The amending language provided that no applications would be accepted from January 1, 1983, to December 31, 1985, except for conversions of 200 units in small, owner-occupied buildings. As to the remaining allotment for 1982, the amendment provided, as relevant, that: "No application for conversion of a residential building of twenty-five (25) units or more submitted by a 1983 registrant shall be approved by the Department of Public Works to fill the unused portion of the 1,000 unit limitation for the year 1982." The ordinance was declared "operative on January 1, 1983."

Under authority of this amendment to the condominium conversion ordinance, the department of public works (DPW) declined to accept plaintiff's application for conversion. Soon thereafter, plaintiff filed suit against the city for declaratory relief and for a writ of mandate seeking a declaration that the condominium conversion ordinance is invalid and an order compelling the DPW to accept and approve plaintiff's application for conversion. In response to the parties' separate motions for summary judgment, the trial court granted only the city's motion and entered judgment in its favor. Plaintiff now appeals.

We turn first to a discussion of the constitutionality of the moratorium. Plaintiff concedes, as it must, that the city acted within its police power in placing limitations on condominium conversions. "California courts have consistently treated condominium conversion regulation as a legitimate exercise of the police power. (E.g., *Santa Monica Pines, Ltd.* [v. *Rent Control Board*], *supra* [1984], 35 Cal.3d 858 [201 Cal.Rptr. 593, 679 P.2d 27] [condominium conversion regulations upheld as part of city's rent control law]; *Kalaydjian* v. *City of Los Angeles* (1983) 149 Cal.App.3d 690 [197 Cal.Rptr. 149] [ordinance requiring landlords who convert apartments to condominiums to furnish relocation costs to displaced tenants upheld against due process and equal protection claims]; *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501 [191 Cal.Rptr. 140] [city's imposition of special requirements with respect to condominium conversion upheld as a presumptively valid exercise of the police power]; *Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488 [126 Cal.Rptr. 659] [condominium conversion ordinance upheld]. See, also, *Rasmussen* v. *City Council* (1983) 140 Cal.App.3d 842 [190 Cal.Rptr.1]; *Krater* v. *City of Los Angeles* (1982) 130 Cal.App.3d 839 [181 Cal.Rptr. 923]; *Hazon-Iny Development, Inc.* v.

*City of Santa Monica* (1982) 128 Cal.App.3d 1 [179 Cal.Rptr. 860].)" (*Griffin Development Co.* v. *City of Oxnard* (1985) 39 Cal.3d 256, 263-264 [217 Cal.Rptr. 1, 703 P.2d 339.)

Plaintiff does not challenge the constitutionality of the ordinance on its face. Instead, plaintiff contends only that, as applied to plaintiff, the ordinance is arbitrary and thus denies plaintiff equal protection of the laws. We disagree.

■ Plaintiff first argues that the "strict scrutiny" test must be employed because important property rights—the rights of the tenants to acquire ownership—are involved. The argument is unsound.

The courts have consistently applied the rational basis test with respect to economic legislation. In *Griffin Development Co.* v. *City of Oxnard, supra,* 39 Cal.3d 256, for example, the owner of an apartment building seeking to convert to condominiums challenged the local ordinance which imposed certain physical requirements upon buildings to be converted. The Supreme Court held that the standard of judicial review (for a substantive due process claim) was the rational basis test. "Griffin in this case does not claim that the Oxnard condominium conversion ordinance restricts any fundamental right, such as freedom of expression or privacy. Rather, it asserts only that its property interests are adversely affected by the city's denial of a special use permit to turn apartments into condominiums. Our review of the ordinance is therefore limited to the question of whether the ordinance is reasonably related to a legitimate governmental purpose." (*Id.,* at pp. 264-265.)

Similarly, in *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038], the plaintiff challenged an ordinance which placed a moratorium on new housing: issuance of residential building permits was prohibited until certain standards relating to schools, sewage disposal and water supplies had been met. The plaintiff likewise argued that the ordinance was subject to strict scrutiny because it discriminated against nonresidents seeking to settle in the city and violated their right to travel. In rejecting the argument, the court stated: "The validity of the challenged ordinance must be measured by the more liberal standards that have traditionally tested the validity of land use restrictions enacted under the municipal police power." (*Id.,* at pp. 603-604.)

■■ Next, plaintiff argues that even under the rational basis test, the ordinance is invalid because 1) it lacks a legitimate public purpose and 2) the classification scheme based on building size is not rationally related to the ordinance's professed goal. Again, plaintiff's arguments must be rejected.

■ It is undisputed that the *purported* goal of the ordinance is to maintain available rental housing. Indeed, the 1979 ordinance declares as one of its purposes: "To preserve a reasonable balance of ownership and rental housing within the City and County of San Francisco." (S.F. Mun. Code, § 1302(c)1.) Such a purpose has consistently been viewed by the courts as a legitimate state interest. (*Griffin Development Co.* v. *City of Oxnard, supra,* 39 Cal.3d at pp. 264, 266 [maintaining " '. . . a healthy rental housing inventory' " is a legitimate governmental purpose]; *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 869 [201 Cal.Rptr. 593, 679 P.2d 27] [restrictions on removing housing from the rental market through condominium conversion have a legitimate purpose]; *Kalaydjian* v. *City of Los Angeles* (1983) 149 Cal.App.3d 690, 693 [197 Cal.Rptr. 149] [tenant relocation assistance fee imposed on condominium converter to ameliorate the adverse effects upon the community's rental stock reflects a proper legislative purpose].)

■ Nor do we discern any merit in plaintiff's objection to the classification based on size. Plaintiff reasons that since there is no real difference in the impact on rental housing between the conversion of one building of 24 units and several buildings totalling 24 units, the classification is thus arbitrary and lacks a rational relationship to the avowed purpose of the ordinance. Again, we must disagree.

Classification based on size alone is not invalid. (*City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93 [48 Cal.Rptr. 889, 410 P.2d 393], cert. den. 384 U.S. 988 [16 L.Ed.2d 1005, 86 S.Ct. 1890] [classification based on height]; *Scuri* v. *Board of Supervisors* (1982) 134 Cal.App.3d 400 [185 Cal.Rptr. 18] [classification based on territorial size]; *I.S.L.E.* v. *County of Santa Clara* (1983) 147 Cal.App.3d 72, 77-79 [194 Cal.Rptr. 854] [same].)

■ In *Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488 [126 Cal.Rptr. 659], involving a challenge to a city ordinance imposing "in lieu" fees upon condominium conversions, we summarized the salient principles concerning the validity of legislative classification schemes: " '[T]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none.' (*Silver* v. *Silver,* 280 U.S. 117, 123 [74 L.Ed. 221, 226, 50 S.Ct. 57, 65 A.L.R. 939]; *Werner* v. *Southern Cal. etc. Newspapers,* 35 Cal.2d 121, 132 [216 P.2d 825, 13 A.L.R.2d 252].) [¶]. . . 'The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free . . . to confine its regulation to those classes of cases in which the need is deemed to be the most evident.' (*Board of Education* v. *Watson,* 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].) . . . A legis-

lative classification is reasonable ' "if any set of facts reasonably can be conceived that would sustain it." ' (*Mathews* v. *Workmen's Comp. Appeals Bd.,* 6 Cal.3d 719, 739 [100 Cal.Rptr. 301, 493 P.2d 1165].)" (*Id.,* at pp. 497-498; see also *Kalaydjian* v. *City of Los Angeles, supra,* 149 Cal.App.3d 690, 694-695 [a tenant relocation assistance fee imposed only on landlords of converted apartments but not "luxury" buildings held not discriminatory]; *Albigese* v. *Jersey City* (1974) 127 N.J.Super. 101 [316 A.2d 483, 490-491], affd. (App.Div. 1974) 129 N.J.Super. 567 [324 A.2d 577] [rent control ordinance applicable to buildings with more than four units was not discriminatory].)

■ In the present case, the facts readily justify the classification. San Francisco has a large population of renters which includes a significant number of elderly and low- to moderate-income residents. The city also has experienced a shortage of rental housing. From these circumstances, the board of supervisors could reasonably conclude that the limitations on condominium conversions would further the goal of preserving scarce rental housing resources. And the city could also reasonably find that buildings of more than 24 units would have a more serious impact on the community in displacing tenants and reducing the rental inventory. Accordingly, we conclude that the amended ordinance is reasonably related to the city's goal of preserving rental housing.

■ As an alternative argument, plaintiff complains that among the class of owners of large buildings, there is no rational distinction between registrants already placed on the 1982 list and those on the waiting list so as to justify preclusion only of the latter from applying for conversion. Stated differently, plaintiff contends that conversion of a 36-unit building by a 1983 applicant will have the same socio-economic impact as conversion by a 1982 applicant since both will fall within the 1982 allotment. Thus, plaintiff concludes, there is no rational basis to exclude later applications.

This argument, of course, is one that can be made against any moratorium. Plaintiff conveniently overlooks the fact that the 1983 conversions are *cumulative* to the 1982 conversions, and the city determined to draw the limit line for conversion of larger buildings for which applications had not yet been made.

Initially, the board of supervisors adopted language which placed a moratorium on virtually all conversions excepting certain owner-occupied buildings. The mayor vetoed that ordinance, explaining, in part, that a total ban on conversions would be unfair to those already involved in the process of conversion. Clearly, the language ultimately adopted was an attempt to moderate adverse effects of the moratorium by permitting smaller building

conversion applications to proceed under the 1982 allotment. The city was not required to ban *all* conversions but was free to restrict its moratorium to those classes of buildings whose impact on rental housing was most palpable.

■ Although it frames the issue as a constitutional one, plaintiff also appears to argue that the moratorium cannot be retroactively applied. This argument is equally unpersuasive.

It is well settled that a legislative body may give laws retrospective application where it clearly evinces that intent and no vested or constitutional rights are infringed. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 591-592 [128 Cal.Rptr. 427, 546 P.2d 1371].) Here, the board of supervisors expressly declared its intent that the ordinance should take effect on January 1, 1983. As of that retroactive effective date,[1] plaintiff had no vested right to convert its building to condominiums. (See *Santa Monica Pines, Ltd.* v. *Rent Control Board, supra,* 35 Cal.3d 858, 866-868 [despite approval of a subdivision map for condominium conversion, the developer had no vested right to complete conversion free of local ordinance restrictions on rental market withdrawals].) At most, plaintiff had a priority number and an invitation from the DPW to submit its application. Plaintiff's application was not submitted until a week after the mayor signed the enacted moratorium ordinance. At that point, plaintiff could have had no reasonable expectation that its application would be accepted. Certainly, plaintiff had no vested right to an approval of its application. The retroactive application of the moratorium was valid.

■ Finally, plaintiff contends its application must be deemed approved as a matter of law. This contention does not survive critical analysis.

The Subdivision Map Act (Gov. Code, § 66410 et seq.) applies equally to condominium conversions. (Gov. Code, § 66424.) Under the act, a tentative and final subdivision map must be approved by the local agency. (Gov. Code, § 66426.) Government Code section 66452.1, subdivision (b) requires the local advisory agency to take action on a subdivision map within 50 days. The legislative body then has 30 days in which it must act. (Gov. Code, § 66452.2; see *Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1012 [164 Cal.Rptr. 776].) Under section 66452.4, the subdivision map is deemed approved if no action is taken within the prescribed time limits.

---

[1] January 1, 1983, is "retrospective" because under the city charter an ordinance does not become effective until 30 days after approval—here, January 23, 1983. (S.F. City Charter, § 2.304.) Ordinances affecting "the sale, lease or purchase of land" may not be passed as emergency measures. (S.F. City Charter, § 2.301.)

Plaintiff contends that the DPW's failure to comply with the 50-day rule resulted in approval of its application by operation of law. The contention is interesting but unconvincing. The 50-day period begins to run "after the filing" of the tentative subdivision map. (Gov. Code, § 66452.1.) Here, the map was never accepted for filing. Plaintiff submitted its application on December 31, 1982. Five days later, on January 5, 1983, the DPW responded by letter declining to accept plaintiff's application.

Moreover, even were we to consider the city's acknowledgement of receipt of the conversion application as a timely filing, the 50-day rule operates only if the agency "is *authorized* by local ordinance to approve, conditionally approve, or disapprove" the application. (Gov. Code, § 66452.1, subd. (b), italics ours; see *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 360 [176 Cal.Rptr. 620] [without a valid general plan, county had no authority to approve or disapprove proposed subdivision].) Here, of course, the ordinance prohibited the DPW from approving any applications for conversions of buildings over 24 units. Thus, the 50-day rule was inapplicable.

Additionally, in factual parallel to *Carmel Valley View, Ltd.* v. *Maggini* (1979) 91 Cal.App.3d 318, 323 [155 Cal.Rptr. 208], where the court held that the board of supervisors had *implicitly* disapproved the original subdivision map by requesting a supplemental EIR, we consider the January 5 return of plaintiff's application packet as an implicit rejection of plaintiff's application by the DPW. Thus, the 50-day deadline was not transgressed.

Nor are we persuaded by plaintiff's tenuous argument that the DPW could not validly reject plaintiff's application under the authority of the moratorium ordinance which was not effective until January 23, 1983. (See fn. 1, *ante,* p. 994.) The argument is wide of the mark. Section 66452.4 deems a subdivision map approved on the 50th day "insofar as [the map] complies with . . . local ordinance." On the 50th day (Feb. 9, 1983), the moratorium ordinance was fully effective. Since plaintiff's application did *not* meet the standards of the local ordinance, its application could not be deemed approved.[2]

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 15, 1987.

---

[2]Parenthetically, questions of constitutional magnitude would arise if, as suggested, section 66452.4 could be read to permit approval of a subdivision without minimum requirements of notice and hearing. (See *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 616 [156 Cal.Rptr. 718, 596 P.2d 1134].)