[No. B064978. Second Dist., Div. Seven. Apr. 14, 1993.]

SUNISA PONGPUTMONG, Plaintiff and Appellant, v.
CITY OF SANTA MONICA et al., Defendants and Respondents.

**COUNSEL**

Michael N. Koenig for Plaintiff and Appellant.

Joseph Lawrence, Acting City Attorney, Martin T. Tachiki and Barry A. Rosenbaum, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**LILLIE, P. J.**—Sunisa Pongputmong appeals from judgment entered following the denial of a petition for writ of mandate. (Code Civ. Proc., § 1085.) She contends she sought proper relief under Code of Civil Procedure section 1085 and that the court erred in denying it.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Pongputmong was the owner of an eight-unit apartment building at 2021 Cloverfield Boulevard in Santa Monica and sought to convert the building to condominiums. The property was subject to Santa Monica City Charter section 2000 et seq., the Tenant Ownership Rights Charter Amendment (TORCA) which provides the only mechanism in the city to convert residential rental property to condominiums.

On February 6, 1991, Pongputmong commenced the conversion process by filing a tenant-participating conversion application (TPC) with the Santa Monica Planning Department, which application was accepted for filing on the same date. Pongputmong stated in the application that tenants occupying 75 percent of the units in the building approved of the proposed conversion.[1] On March 19, 1991, Pongputmong submitted her vesting tentative tract map (VTTM) to the planning department; it was accepted for filing on March 27, 1991.[2]

On May 1, 1991, at a hearing on the TPC and VTTM applications before the Santa Monica Planning Commission, two tenants residing at the subject property objected to the approval of the application, contending that the required tenant approval for the conversion had been obtained by coercion and misrepresentation. Based on these objections, the planning commission continued the hearing to enable the city staff to verify that tenant approval for the conversion had been properly obtained.

City staff thereafter sent letters to all of the tenants at the subject apartment building, inquiring whether their approval of the conversion was obtained through coercion or misrepresentation. Tenants residing in six of the units responded; three indicated Pongputmong had applied coercion to obtain the required tenant approval. One of the tenants, who was listed by Pongputmong as approving the conversion, Edna Wilson-Hoesch, wrote that Pongputmong had threatened her with immediate eviction or going out of business if the tenant did not indicate her approval of the conversion.

On September 4, 1991, the planning commission denied the TPC and VTTM, finding that there had been coercion and misrepresentation in obtaining tenant approval. The planning commission further found that Pongputmong would not have obtained the required tenant approval for the conversion without the coerced approval of one of the tenants.

On September 9, 1991, Pongputmong appealed the planning commission's denial of the TPC to the Santa Monica City Council.

On October 8, 1991, the city council held a public hearing and after taking public testimony, directed the city attorney's office to conduct further investigation into allegations of coercion and misrepresentation alleged by certain tenants.

---

[1] As a precondition to filing the application, tenants occupying not less than two-thirds of the rental units must agree to the conversion. (Santa Monica Charter, § 2002, subd. (f).)

[2] Pursuant to Government Code section 66426, a tentative map is required for all subdivisions creating five or more condominiums. Both the TPC and VTTM must be approved by the city before a TORCA conversion will be authorized.

On October 15, 1991, Pongputmong filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085 contending her applications must be deemed approved by operation of law.

On October 28 and 29, 1991, the city attorney's office conducted hearings before a hearing officer. Seven of the eight tenants of the building testified under oath concerning the circumstances surrounding their decision to support the proposed conversion of the apartment building. Wilson-Hoesch specifically testified that Pongputmong threatened her with eviction or going out of business if she did not agree to the conversion. She testified these threats occurred on several occasions over a period of several months until she gave written approval to the conversion in January 1991. She testified that Pongputmong's actions coerced her into agreeing to the conversion. She additionally testified that she wrote a second letter to city staff seeking to retract her initial letter alleging coercion and misrepresentation because of pressure exerted on her by Pongputmong to retract the first letter. Pongputmong dictated to Wilson-Hoesch the information that Pongputmong wanted in the second letter.

On November 12, 1991, the city council found that the TPC application was the result of misrepresentation or coercion in that Pongputmong coerced and threatened one of the tenants with eviction and going out of business if the tenant did not agree to the conversion. The city council also found that Pongputmong would not have obtained the required tenant approval for this conversion without the coerced approval of one of the tenants. The city council also found that the declaration of Pongputmong in the TPC application that she did not threaten to cease operating her property as residential rental property in order to gain tenant approval of the conversion was false. The city council denied the TPC because the application was the result of coercion and misrepresentation; the VTTM was similarly denied.

On November 20, 1991, Pongputmong filed an amended petition for writ of mandate pursuant to Code of Civil Procedure section 1085, alleging that the city had failed to act upon her application within the time periods established by law.

The writ petition was heard and denied on January 10, 1992.[3]

---

[3]In a minute order the court stated the application could not have been deemed approved because respondent found fraud and coercion in obtaining tenant's signature. The application was void.

DISCUSSION

I

*Writ Pursuant to Code of Civil Procedure Section 1085*

Appellant first contends that she properly sought relief pursuant to Code of Civil Procedure section 1085[4] and it was prejudicial error for the court to fail to grant relief on that basis. Respondent concedes, however, that while it initially challenged the propriety of bringing a petition pursuant to Code of Civil Procedure section 1085 when it opposed the request for issuance of alternative writ, it did not thereafter raise this challenge at the writ hearing itself. Additionally, contrary to appellant's assertion, it does not appear from the record that the superior court denied relief because the petition had been filed pursuant to Code of Civil Procedure section 1085 or that the court failed to rule on the issues raised by the petition.

II

*Applications Deemed Approved as a Matter of Law*

■ Appellant next contends that the trial court committed prejudicial error by failing to apply mandatory provisions of state and local law which require that the land use applications be deemed granted as a matter of law. We reject this contention.

With regard to the approval of the VTTM, Government Code section 66452.1, subdivision (b) provides: "If the advisory agency is authorized by local ordinance to approve, conditionally approve, or disapprove the tentative map, it shall take such action within 50 days after the filing thereof with its clerk and report its action to the subdivider.[5]

Government Code section 66452.4 provides: "If no action is taken upon a tentative map . . . within the time limits specified in this chapter or any authorized extension thereof, the tentative map as filed shall be deemed to be approved, insofar as it complies with other applicable requirements of this

[4]Code of Civil Procedure section 1085 provides: "[A writ] may be issued by any court, except a municipal or justice court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

[5]The planning commission acts as an advisory agency and is authorized to approve, conditionally approve or disapprove a tentative map. (Santa Monica Mun. Code, § 9361.)

division and local ordinance, and it shall be the duty of the clerk of the legislative body to certify or state his or her approval."

Similarly, Santa Monica Municipal Code section 9362, subdivision (b) provides that a tentative map shall be deemed approved if the planning commission does not take action in a timely manner, insofar as the tentative map "complies with other applicable provisions of the Subdivision Map Act, this Chapter or other City ordinances."

Santa Monica Charter section 2004, subdivision (a) provides that "A Tenant-Participating Conversion Application, along with any required tentative subdivision map . . . shall be denied if the Tenant-Participating Conversion Application . . . was the result of fraud, misrepresentation, or threat or similar coercion. . . ."

The planning commission specifically found that the TPC application was a result of misrepresentation or coercion and that Pongputmong threatened one of her tenants that she would evict the tenant or go out of business if the tenant did not agree to the conversion. While the tentative map was filed on March 27 and was not approved, conditionally approved or disapproved within the specified 50 days, it cannot be considered deemed approved because it failed to comply with local law.

Pongputmong's claim that the TPC application should be deemed approved is similarly without merit. Santa Monica Charter section 2003, subdivision (e) provides in pertinent part: "Any Tenant-Participating Conversion Application shall be deemed approved subject to the conditions set forth in Section 2004 of this Article if it is not approved or denied within the time periods required by this Section." As the conversion application was the result of coercion or misrepresentation, and did not meet the conditions in section 2004, the application could not have been deemed approved pursuant to section 2003, subdivision (e).

In *Leavenworth Properties* v. *City and County of San Francisco* (1987) 189 Cal.App.3d 986, 995 [234 Cal.Rptr. 598], the court rejected an argument that plaintiff's tentative map application to convert a 36-unit apartment building into a condominium project was "deemed approved" because of the language in Government Code section 66452.4. While it concluded that the map had never been accepted for filing and thus no time limits had expired, the court also stated that even if it were to consider the map as filed, the "50-day rule operates only if the agency 'is *authorized* by local ordinance to approve, conditionally approve, or disapprove' the application. [Citations.]" (*Leavenworth Properties* v. *City and County of San Francisco, supra*, 189 Cal.App.3d

at p. 995, italics in original.) Upon finding that the local ordinance prohibited approval of applications for conversions of buildings over 24 units, the court stated the application could not be deemed approved.

In *Great Western Sav. & Loan Assn.* v. *City of Los Angeles* (1973) 31 Cal.App.3d 403 [107 Cal.Rptr. 359], the court discussed the significance of automatic approval language found in Business and Professions Code former section 11611 as it related to a final tract map. Business and Professions Code former section 11611 provided in pertinent part that "[i]f no action is taken within such time limit or within the time to which it has been extended by such mutual consent, the map, if it conforms to all the requirements above set forth, shall be deemed to be approved. . . ." The court noted that the automatic approval language was only effective if the final tract map conformed to "all of the requirements above set forth" and that the governing body's failure to take action within the prescribed time was not sufficient.

Similarly, here while the planning commission failed to approve or deny the applications within the time period required, the TPC and tentative map failed to comply with local ordinance and could not be deemed approved.

Additionally, at the time the superior court had before it the question of whether the applications had been deemed approved, coercion and misrepresentation had been established. The court could not then conclude the applications were deemed approved since they failed to comply with local ordinance.

Appellant's citation to *Palmer* v. *City of Ojai* (1986) 178 Cal.App.3d 280 [223 Cal.Rptr. 542] is not persuasive. That case concerned the application of language in a statutory scheme that did not require that a proposed development otherwise comply with applicable state and local law before it was deemed approved. (See *Selinger* v. *City Council* (1989) 216 Cal.App.3d 259, 268 [264 Cal.Rptr. 499].)

III

*Hearing Before City Council*

Appellant's claim that the application must be deemed approved because the city council did not render a timely decision on the application is also rejected. Government Code section 66452.5, subdivision (a), provides that an appeal may be taken from an action of the advisory agency with respect to a tentative map. "Upon the filing of an appeal, the . . . legislative

body shall set the matter for hearing. The hearing shall be held within 30 days after the date of filing the appeal. Within 10 days following the conclusion of the hearing, the . . . legislative body shall render its decision on the appeal." Pongputmong appealed the decision to the city council on September 9, 1991. On October 8, 1991, the city council had a public hearing, took testimony and directed the city attorney's office to conduct further investigation. The hearing commenced within 30 days after the date of filing the appeal. There is no requirement that the hearing conclude within a specified period. (See *Knoell* v. *City of Lompoc* (1987) 195 Cal.App.3d 378, 381-382 [240 Cal.Rptr. 464].)

## IV

### *Findings of Misrepresentation and Coercion*

Appellant next claims in essence that the findings of misrepresentation and coercion made by respondents are not supported by the record. However, the amended writ petition filed in superior court claimed only that the conversion applications be deemed approved as a matter of law because of inaction by respondents. It did not challenge respondents' findings of misrepresentation or coercion. Having failed to challenge these findings below they are not now cognizable on appeal. (See *Henry* v. *Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 100-101 [284 Cal.Rptr. 255]; *Tielsch* v. *City of Anaheim* (1984) 160 Cal.App.3d 570, 574 [206 Cal.Rptr. 738].)

### DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.